NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 240192-U

NO. 4-24-0192

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 10, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| MICHAEL D. STOKICH, | ) | No. 22CF689 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | William A. Yoder, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE CAVANAGH delivered the judgment of the court.
Justices Harris and Grischow concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, finding (1) the evidence was sufficient for a jury to
reasonably conclude defendant was guilty beyond a reasonable doubt of unlawful
possession of a weapon by a felon, (2) the unlawful possession of a weapon by a
felon statue is constitutional, (3) defendant forfeited his as-applied constitutional
challenge, and (4) defendant's seven-year prison sentence was not excessive.

¶ 2    Defendant, Michael D. Stokich, was convicted by a jury of unlawful possession of

a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2022)) and possessing a firearm in violation of

the Firearm Owners Identification Card Act (FOID Card Act) (430 ILCS 65/2(a)(1) (West

2022)). The convictions merged, and he was subsequently sentenced to seven years'

imprisonment for unlawfully possessing a weapon as a felon. On appeal, defendant argues (1) the

evidence was insufficient to convict him of unlawful possession of a weapon by a felon; (2) his

conviction for unlawful possession of a weapon by a felon violates the second amendment (U.S.

Const., amend. II) both on its face and as applied to him pursuant the United States Supreme

Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), and (3) his seven-year prison sentence was excessive.

¶ 3                                       I. BACKGROUND

¶ 4          In July 2022, defendant was charged by information with unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2022)) for knowingly possessing a "9-millimeter pistol" after having been convicted of felony theft in 2012 (count I); a violation of the FOID Card Act (430 ILCS 65/2(a)(1) (West 2022)) for possessing the aforementioned firearm without possessing the requisite FOID card (count II); aggravated unlawful restraint (720 ILCS 5/10-3.1(a) (West 2022)) for knowingly and without legal authority detaining Melissa Boyce within her residence by use of a firearm (count III); and aggravated assault (*id.* § 12-12(c)(1)) for placing Boyce in reasonable apprehension of receiving a battery by telling her he would shoot her (count IV). Defendant was subsequently indicted by a grand jury on the first three counts. The matter proceeded to a jury trial in September 2023. Prior to trial, the State dismissed count IV and proceeded only on counts I through III.

¶ 5                                       A. Jury Trial

¶ 6          At trial, Janice Rankin testified she was a friend and coworker of Boyce. Rankin stated Boyce was in a relationship with defendant. A photograph depicting text messages between Rankin and Boyce was admitted into evidence without objection. The photograph showed that on July 10, 2022, Boyce had messaged the word "Cops" to Rankin at 12:52 p.m. At 1:14 p.m., Boyce messaged Rankin again, stating, "Call them plzzzz." Rankin subsequently called the police. She then met a police officer, Brian Murphy, outside of Boyce's apartment to perform a well-check on Boyce. Murphy knocked on the door to Boyce's apartment. Rankin

stated Boyce opened the door, and defendant could be observed lying on the couch. Boyce left the apartment with Rankin. Rankin described Boyce as "shaking" with anxiety.

¶ 7         Boyce testified she had been dating defendant for approximately a month. He had been staying at her apartment for a week or two prior to the incident on July 10, 2022. Boyce recalled that on July 9, 2022, defendant messaged her, stating he had found her gun. She stated she kept a gun in a safe in a closet. When she arrived home, she saw defendant and felt scared. She walked to the "City Circle" park near her apartment. When she returned, defendant was asleep on her couch.

¶ 8         Boyce recalled that, on the morning of July 10, 2022, defendant was angry and woke her up by yelling at her. She stayed in her bedroom after defendant had left her room and returned to the living room. She said she only left her bedroom on two occasions to use the bathroom. During one trip to the bathroom, she retrieved her phone from under the couch where defendant was sleeping. She did not recall having any conversations with defendant during her trips to the bathroom. After retrieving her phone, Boyce contemplated calling the police but was concerned defendant would hear her, so she messaged Rankin to call the police for her. Boyce confirmed she was fearful of defendant because she believed "[h]e had [her] gun and was really mad for no particular reason." Boyce stated her gun was no longer in the safe in her closet. No one else was in the apartment. Boyce later identified her gun when it was found under the couch where defendant had been sleeping. She stated she did not place the gun under her couch. She stated she did not feel like she was able to leave her apartment because defendant could "outrun" her. She recalled defendant had contacted her employer and told them she could not return to work "until they fired some of the other employees." At first, she did not recall that defendant had taken her car keys. However, she later recalled telling Officer Murphy she had tried to leave

her apartment that morning, but defendant had called her employer and taken her car keys. She described her fear that "he had my gun and I had no way to fight it off."

¶ 9 On cross-examination, Boyce stated defendant had planned to leave her apartment on July 10, 2022. Boyce confirmed she lived approximately a block and a half from the Le Roy Police Department. She stated on July 9, she got off work at midnight and returned home. Because she was afraid of defendant, she left home and proceeded to the "City Circle" park. She confirmed defendant had not brandished a weapon at her. She also confirmed she had told Officer Murphy she had wandered from midnight until approximately 2 a.m. looking for Corporal Robert King. However, she could not recall the exact time.

¶ 10 Boyce said she gave three separate statements to the police. Her first statement was given at approximately 1:30 p.m., directly after the incident occurred, a second statement was given later that evening, and a third statement was made on July 13, 2022. Boyce confirmed during her first statement to Officer Murphy, she stated, " 'I don't know if [defendant] had [the gun] in his hand last night. He did not have it in his hand today.' " Additionally, she stated defendant had threatened her through text messages the prior evening while she was at work. When asked if she recalled telling Officer Murphy during her second interview about defendant possessing a gun, Boyce stated, "I don't remember." During her third statement, Boyce confirmed she told the police she had observed defendant with her gun in his hand when she got home around 2 a.m. She said defendant was sitting on her couch with the gun. Boyce confirmed she had denied during her first statement that defendant had physically touched her. She explained she equated physical touch with "punch[ing]" her. During her second interview, she had not stated defendant physically touched her. During the third interview, she stated defendant grabbed her hand and took her keys.

- 4 -

¶ 11        On redirect examination, Boyce stated she believed Corporal King was on duty when she initially got off work and she was looking for him to help but had no way of contacting him. She could not explicitly recall the details of what threats defendant had text messaged her while she was at work. During re-cross examination, she confirmed she had told Murphy she did not know where the gun was. However, she then went to the couch, looked underneath, and saw the gun. Boyce stated she "figured that is where it was because that is where I found my phone."

¶ 12        Le Roy Police Officer Brian Murphy testified that on July 10, 2022, he was dispatched to Boyce's apartment for a wellness check. When he knocked on the door, he heard a male's voice he was later able to identify as belonging to defendant. Defendant opened the door. Murphy also observed Boyce and noted that her demeanor was different than his prior interactions with her. He described her as having "a deer in the headlights" demeanor and being visibly distraught, compared to her prior "bubbly personality." After Boyce left the apartment, she informed Murphy defendant had a gun. Murphy later observed the gun under the couch, with live ammunition in the magazine.

¶ 13        During cross-examination, Murphy confirmed he handled the gun with his bare hands and that he did not preserve the gun for fingerprints. He explained he did not preserve the gun because he did not want to take it away from Boyce, who owned it and used it for self-defense.

¶ 14        The parties stipulated defendant had been convicted of a qualifying felony offense. The State rested. Defendant moved for a directed verdict on all counts. The trial court denied defendant's motion for a directed verdict on counts I and II but granted it on count III. Defendant did not present any evidence.

¶ 15        The jury returned a guilty verdict on both remaining counts.

¶ 16                                B. Posttrial

¶ 17        The parties reconvened in November 2023 for (1) a preliminary inquiry pursuant

to *People v. Krankel*, 102 Ill. 2d 181 (1984), (2) defendant's motion for a judgment of acquittal

notwithstanding the verdict or for a new trial, and (3) the sentencing hearing. The trial court

found defendant had not provided a sufficient basis to appoint outside counsel to review his

ineffective-assistance-of-counsel claims. The court also denied defendant's posttrial motions.

The matter proceeded to sentencing.

¶ 18        The trial court admitted a corrected presentence investigation report (PSI), which

showed defendant had been adjudicated as a delinquent in 2002, convicted of felony theft in

2012, and convicted of felony retail theft in 2017. The PSI further showed defendant had been

convicted of misdemeanor offenses, which included aggravated assault in 2008, driving under

the influence of alcohol in 2010, domestic battery in 2010, disorderly conduct in 2015, and

criminal trespass to land in 2018. Defendant did not participate in the preparation of the PSI. The

court also admitted a letter from defendant in which he stated he had intervened in a jail fight to

protect a correctional officer who was being battered by another inmate.

¶ 19        The State highlighted defendant's criminal history and sought a sentence of eight

years' imprisonment. Defendant argued in mitigation (1) his conduct neither caused nor

threatened serious physical harm; (2) his criminal history was largely nonviolent; (3) he suffers

from a seizure condition; (4) he has rehabilitative potential; and (5) he participated in educational

programs while incarcerated. Additionally, defendant submitted exhibits containing certificates

of achievement obtained on various subjects while he was incarcerated.

¶ 20        Defendant gave a statement in allocution, wherein he noted he relocated to the

Bloomington area from southern Illinois as part of his recovery for a benzodiazepines addiction.

He participated in programs for people suffering from addiction, attended meetings, and "signed up" to pursue a "social work degree." He had interviewed for a job as a "peer recovery specialist." He was certified in the administration of Narcan and first aid. He noted his efforts in assisting a correctional officer who was attacked by another inmate. He argued the State's recommended prison sentence was excessive and expressed remorse.

¶ 21    The trial court began by noting it had considered the PSI, defendant's exhibits submitted into evidence, his statement in allocution, the arguments of the parties, and the statutory factors in aggravation and mitigation. The court then merged defendant's conviction for possessing a firearm without a valid FOID card into his unlawful possession of a weapon by a felon conviction.

¶ 22    The trial court lamented defendant's failure to participate in the PSI "because it restrict[ed] the amount of information the Court ha[d] available to it in fashioning what would be the most appropriate sentence." However, the court noted defendant's failure to participate would not be held against him. The court described defendant's criminal history as "significant" and stated, "It's not the worst I've ever seen, and it's certainly not the best I've ever seen." In addition, the court noted defendant had already served a three-year prison sentence in 2012. The court stated the "offense involved possession of a firearm by a convicted felon," which puts "the community at risk when firearms are possessed illegally." As such, the court found, defendant's conduct was a "threat to the community as a factor in aggravation." The court imposed a seven-year prison sentence.

¶ 23    Defendant filed a motion to reconsider his sentence. At the hearing, defendant sought to proceed *pro se*, which the trial court granted. The court then conducted a second *Krankel* hearing, wherein it again found defendant had not provided a sufficient basis to appoint

outside counsel to review his ineffective-assistance-of-counsel claims. Defendant subsequently requested the reappointment of the public defender. The court reappointed the public defender and denied defendant's motion to reconsider his sentence.

¶ 24 This appeal followed.

¶ 25                              II. ANALYSIS

¶ 26 On appeal, defendant argues (1) the evidence was insufficient to convict him of unlawful possession of a weapon by a felon, (2) his conviction for unlawful possession of a weapon by a felon was unconstitutional both on its face and as applied to him, and (3) his seven-year prison sentence was excessive. We address each claim in turn.

¶ 27                  A. Sufficiency of the Evidence Claim

¶ 28 When examining the sufficiency of the evidence, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985). The trier of fact has the responsibility to assess the witnesses' credibility, weigh their testimony, resolve inconsistencies and conflicts in the evidence, and draw reasonable inferences from the evidence. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). We will not reverse a criminal conviction based on insufficient evidence unless the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Murray*, 2019 IL 123289, ¶ 19.

¶ 29 For unlawful possession of a firearm by a felon, the State was required to prove (1) defendant knowingly possessed a firearm and (2) he had previously been convicted of a qualifying felony offense. 720 ILCS 5/24-1.1(a) (West 2022). Given he stipulated to having been convicted of a qualifying felony offense, defendant does not challenge the sufficiency of the

evidence to prove the second element. Therefore, we restrict our analysis to whether defendant knowingly possessed a firearm.

¶ 30        Defendant contends the State failed to prove beyond a reasonable doubt he ever possessed the firearm found under Boyce's couch. First, neither Murphy nor Rankin testified to observing defendant possessing a firearm. Defendant notes Boyce testified she had last seen her gun in a safe in the closet, but she did not say when. She confirmed she told Murphy immediately following the July 10, 2022, incident she did not know if defendant had her gun in his hand. During her second statement to Murphy, Boyce again did not claim she observed defendant with her gun. It was not until her third statement, three days after the incident, when Boyce told Murphy she had seen defendant with her gun in his hand when she had arrived home at approximately 2 a.m. on July 10. In his argument, defendant highlights Boyce's contradictory testimony between her first and third statements to Murphy.

¶ 31        Also, Boyce testified she had received a text message from defendant stating he had "found" the gun. However, defendant notes the text message was never entered into evidence and Boyce never testified how she knew the text message came from defendant. Further, defendant argues, merely finding a gun in his vicinity did not necessarily establish he possessed it.

¶ 32        Defendant's argument is two-fold. He claims: (1) the State failed to show he had constructive possession of the gun and (2) Boyce's testimony was inconsistent, unreliable, and insufficient to support the jury's verdict beyond a reasonable doubt. For the reasons that follow, we disagree with defendant.

¶ 33        Defendant argues Boyce's testimony was unreliable. The critical inconsistency, he claims, was whether Boyce ever saw him *actually* possess the gun. As a court of review, we

will not retry defendant or substitute our judgment for that of the jury regarding witness credibility or the weight of the evidence. *People v. Gray*, 2017 IL 120958, ¶ 35. Moreso, the apparent contradiction of which defendant complains stems from Boyce's first and third statements to Officer Murphy. However, we can resolve defendant's insufficiency-of-the-evidence claim despite this contradiction.

¶ 34       The jury in this case had been given an instruction defining constructive possession of a firearm, requiring the State to prove defendant (1) had knowledge of the contraband and (2) exercised immediate and exclusive control over the area where the contraband was found. See *People v. Maldonado*, 2015 IL App (1st) 131874, ¶ 23. Constructive possession may be proven entirely through circumstantial evidence. *People v. McCarter*, 339 Ill. App. 3d 876, 879 (2003).

¶ 35       It is uncontradicted from Boyce's testimony defendant told her via text message he had found her gun. On appeal, defendant argues this testimony was unreliable, as the message was never submitted into evidence. However, defendant did not object to this testimony at trial, nor does he identify on appeal the exact nature of the error or cite authority as to why we should consider it error. See *People v. Macias*, 2015 IL App (1st) 132039, ¶ 88 ("[A] reviewing court is entitled to have the issues on appeal clearly defined with pertinent authority cited and a cohesive legal argument presented." (Internal quotation marks omitted.)). Furthermore, defendant argues this evidence at most only shows he had knowledge of the gun. Here, we agree with defendant that this evidence shows he had knowledge of the gun, thereby satisfying the first element of constructive possession.

¶ 36       It is further uncontradicted from the record defendant had been living in Boyce's apartment at the time of the offense. More precisely, he had been sleeping on her couch. Boyce

testified she had left her bedroom on the date of the incident twice to use the bathroom, passing by the couch where defendant was sleeping. She testified she had not placed the gun under the couch. Yet, the gun was ultimately discovered under the couch.

¶ 37 "Constructive possession exists where there is no personal dominion over the contraband, but the defendant has control over the area where the contraband was found." *People v. Terrell*, 2017 IL App (1st) 142726, ¶ 18. "Habitation of the location where the contraband is found can constitute sufficient evidence of control to establish constructive possession." *Maldonado*, 2015 IL App (1st) 131874, ¶ 29. Therefore, we find a jury could reasonably conclude beyond a reasonable doubt defendant had constructive possession of the gun found under the couch where he had been sleeping while living at Boyce's apartment.

¶ 38                                    B. Constitutional Claims

¶ 39 Next, defendant argues the unlawful possession of a weapon by a felon statute violates the second amendment both on its face and as applied to him pursuant the United States Supreme Court's decision in *Bruen*. We disagree.

¶ 40                        1. *Second Amendment Facial Constitutional Challenge*

¶ 41 In *Bruen*, the Supreme Court held, "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct," and the government "must then justify its regulation by demonstrating that [the regulation] is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24. Additionally, defendant points to the Supreme Court's decision in *United States v. Rahimi*, 602 U.S. 680 (2024), to argue "law-abiding" does not necessarily exclude convicted felons from the protections offered by the second amendment. Finally, he cites *People v. Brooks*, 2023 IL App

(1st) 200435, for the proposition the plain language of the second amendment presumptively protects convicted felons.

¶ 42       We begin by noting this court has previously addressed the issue of a facial constitutional challenge to the unlawful possession of a weapon statute. See *People v. Burns*, 2024 IL App (4th) 230428; see also *People v. Boyce*, 2023 IL App (4th) 221113-U, and *People v. Langston*, 2023 IL App (4th) 230162-U. In *Boyce*, we stated:

> " 'The constitutionality of a statute is analyzed under well-settled principles. Statutes are presumed constitutional, and to rebut that presumption, the party challenging a statute's constitutionality has the burden of establishing a clear violation. [Citation.] A party raising a facial challenge to a statute faces a particularly heavy burden. [Citation.] A statute will be deemed facially unconstitutional only if there is no set of circumstances under which the statute would be valid. [Citation.] The particular facts related to the challenging party are irrelevant. [Citation.] If it is reasonably possible to construe the statute in a way that preserves its constitutionality, we must do so.' " *Boyce*, 2023 IL App (4th) 221113-U, ¶ 12 (quoting *People v. Bochenek*, 2021 IL 125889, ¶ 10).

¶ 43       In *Burns*, we cited *People v. Baker*, 2023 IL App (1st) 220328, for the proposition that *Bruen* does not apply to felons. The second amendment protects the right of "law-abiding citizens" to possess firearms. *Burns*, 2024 IL App (4th) 230428, ¶ 21 (citing *Bruen*, 597 U.S. at 9-10).

¶ 44       Additionally, *Rahimi* does not help defendant here because, as the *Rahimi* Court explained, *District of Columbia v. Heller*, 554 U.S. 570 (2008), "never established a categorical rule that the Constitution prohibits regulations that forbid firearm possession in the home. In fact,

our opinion stated that many such prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.' " *Rahimi*, 602 U.S. ___, 144 S. Ct. at 1902 (quoting *Heller*, 554 U.S. at 626, 627 n.26). Thus, *Rahimi* does not support the proposition the second amendment presumptively protects a convicted felon's right to possess a firearm.

¶ 45 We find nothing in defendant's arguments that would persuade us to believe *Bruen* applies here; therefore, defendant has failed to show the statute is facially unconstitutional. See, *e.g.*, *Burns*, 2024 IL App (4th) 230428, ¶ 21; *Baker*, 2023 IL App (1st) 220328, ¶ 37; *Boyce*, 2023 IL App (4th) 221113-U, ¶ 16; *People v. Smith*, 2023 IL App (2d) 220340-U, ¶ 57; *People v. Kelley*, 2024 IL App (1st) 230569, ¶ 17; *Langston*, 2023 IL App (4th) 230162-U, ¶ 19; *People v. Leonard*, 2024 IL App (4th) 230413-U, ¶ 15.

¶ 46                    2. *Second Amendment As-Applied Challenge*

¶ 47 Defendant next contends, because his felony convictions were for nonviolent offenses, we should find the unlawful possession of a weapon statute unconstitutional as applied to him. The State argues this issue is premature because the record was insufficiently developed to permit defendant's as-applied claim. We agree with the State.

¶ 48 In *People v. Ivy*, 2023 IL App (4th) 220646-U, ¶ 14, we stated:

> " 'The distinction between facial and as-applied constitutional challenges is critical.' [Citation.]. An as-applied constitutional challenge requires a defendant show a 'statute is unconstitutional as it applies to the specific facts and circumstances' of that defendant. [Citation.] Because an as-applied constitutional challenge depends on the specific facts and circumstances of that defendant, it is vital the record be sufficiently developed on the defendant's specific facts and circumstances for appellate review. [Citation.] 'A court is not capable of making

- 13 -

an "as applied" determination of unconstitutionality when there has been no evidentiary hearing and no findings of fact. [Citation.] Without an evidentiary record, any finding that a statute is unconstitutional "as applied" is premature.' (Internal quotation marks omitted.) *Id.*"

¶ 49 Much like in *Ivy*, the trial court in the case *sub judice* did not make any factual findings related to defendant's prior convictions or how they pertain to his present claims pursuant to the second amendment. Here, like *Ivy*, the record only contains basic information about defendant's prior criminal history as contained in the PSI. We find nothing in the case at bar distinguishable from *Ivy*. "Therefore, defendant has forfeited his as-applied constitutional challenge to his unlawful possession of a weapon by a felon conviction by raising it for the first time on appeal." *Id.* ¶ 18; see *People v. House*, 2021 IL 125124, ¶ 31 (holding the appellate court erred when addressing an as-applied constitutional challenge pursuant to the proportionate penalties clause of the Illinois Constitution without a developed evidentiary record or factual findings).

¶ 50                                     C. Excessive Sentence Claim

¶ 51 Lastly, defendant argues his sentence was excessive because (1) it was disproportionate to the nature of the offense, (2) the trial court failed to adequately consider his rehabilitative potential, and (3) the court improperly considered an element inherent in the charged offense as a factor in aggravation.

¶ 52 "The legislature sets forth by statute the range of permissible sentences for each class of criminal offense." *People v. Fern*, 189 Ill. 2d 48, 53 (1999). A reviewing court affords great deference to a trial court's sentencing judgment because, "having observed the defendant and the proceedings, [it] is in a far better position to consider such factors as the defendant's

credibility, demeanor, general moral character, mentality, social environment, and habits than a reviewing court, which must rely on a 'cold' record." *People v. Little*, 2011 IL App (4th) 090787, ¶ 24. A sentence that falls within the applicable statutory limits is reviewed for an abuse of discretion. *People v. Price*, 2011 IL App (4th) 100311, ¶ 36. "A sentence within statutory limits will not be deemed excessive and an abuse of the court's discretion unless it is 'greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense.' " *People v. Pina*, 2019 IL App (4th) 170614, ¶ 20 (quoting *Fern*, 189 Ill. 2d at 54).

¶ 53        Here, defendant was found guilty of unlawful possession of a weapon by a felon, a Class 3 felony. 720 ILCS 5/24-1.1(e) (West 2022). Defendant was subject to a term of not less than 2 years and not more than 10 years in prison. *Id.* Because defendant's sentence was within the permissible range, we begin with the presumption the sentence was proper. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46.

¶ 54        Defendant contends there was no evidence showing he used a firearm against any person. He was not carrying it in a sensitive location or publicly. Rather, he was convicted of possessing a firearm in the firearm owner's residence, where he was permitted to reside. Additionally, his prior felony convictions were for nonviolent theft offenses. He also contends the trial court failed to properly consider his rehabilitative potential. Specifically, the court never directly mentioned defendant's numerous certifications, actions, and recovery efforts pursued both before and during his incarceration.

¶ 55        The abuse of discretion standard is deferential to sentencing courts. *People v. Fisher*, 407 Ill. App. 3d 585, 589 (2011). In this case, the trial court found in aggravation not only defendant's "significant" criminal history but also that his conduct caused or threatened serious harm. Boyce testified on numerous occasions she was directly placed in fear because of

defendant's possession of a firearm. Defendant's PSI showed multiple felony convictions and a prior sentence to the Illinois Department of Corrections. Ultimately, the court was in a better position to observe defendant's conduct and weigh the need for a harsher sentence.

¶ 56        Furthermore, the fact that mitigating factors may have existed in defendant's case does not outweigh the aggravating factors the trial court noted in its decision. A trial court is not required to afford greater weight to mitigating factors than to the severity of the offense. *People v. Alexander*, 239 Ill. 2d 205, 214 (2010); see *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002) (noting the seriousness of the offense is the most important sentencing factor). Nor does the presence of mitigating factors require a minimum sentence. *People v. Jones*, 2014 IL App (1st) 120927, ¶ 55. "Where mitigating evidence is presented to the trial court, it is presumed, absent some indication to the contrary, other than the sentence itself, that the court considered it." *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 19. While the court may not have explicitly commented on defendant's evidence in mitigation, it admitted that evidence and stated at the outset it had considered defendant's evidence when fashioning its sentence. Accordingly, we find the court's sentence was not disproportionate to the nature of the offense.

¶ 57        Lastly, defendant contends the trial court considered a factor implicit in the offense of unlawful possession of a weapon by a felon and used that as an aggravating factor. Defendant concedes he failed to raise this issue before the trial court but asks that we review it under the plain-error doctrine.

¶ 58        "The plain-error doctrine is a narrow and limited exception" to the forfeiture rule. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). To obtain relief under the plain-error doctrine, a defendant must first show a clear or obvious error occurred. *Pina*, 2019 IL App (4th) 170614, ¶ 29. If a defendant successfully shows an error occurred, then he must show either (1) the

evidence was closely balanced at sentencing or (2) the error was sufficiently grave that it deprived him of a fair sentencing hearing. *People v. Ahlers*, 402 Ill. App. 3d 726, 734 (2010). The defendant bears the burden of persuasion under both prongs, and the procedural default will be honored where a defendant fails to meet his burden. *Id.*; see also *Hillier*, 237 Ill. 2d at 545.

¶ 59 "A double enhancement occurs when (1) a single factor is used both as an element of an offense and as a basis for imposing a harsher sentence *** or (2) the same factor is used twice to elevate the severity of the offense itself." (Internal quotation marks omitted.) *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 66. "There is a strong presumption that the trial court based its sentencing determination on proper legal reasoning, and a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court." *People v. Canizalez-Cardena*, 2012 IL App (4th) 110720, ¶ 22. The defendant bears the burden to affirmatively establish the sentence imposed was based on an improper factor. *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 103. A sentence will not be reversed unless it is evident the trial court relied upon an improper factor. *Id.* "Whether the trial court relied upon an improper factor at sentencing is a question of law reviewed *de novo*." *Id.*

¶ 60 Defendant's contention here specifically focuses on the trial court's statement that it "always put[s] the community at risk when firearms are possessed illegally, and so the Court does believe that there's a threat to the community as a factor in aggravation by the conduct of the defendant." Defendant argues the court improperly used his possession of a firearm that was an element inherent in the offense as an aggravating factor for a harsher sentence. He notes his sentence was toward the higher end of the sentencing range, but the court had only referenced two aggravating factors: (1) his criminal history and (2) his conduct caused or threatened serious

harm. However, the court had already stated defendant's criminal history was "not the worst [it had] ever seen," thereby diminishing its aggravating effect.

¶ 61    We are unpersuaded by defendant's argument. See *Insurance Benefit Group, Inc. v. Guarantee Trust Life Insurance Co.*, 2017 IL App (1st) 162808, ¶ 44 ("[D]efendant, as the appellant, bears the burden of persuasion as to [his] claims of error.")."In determining whether the trial court based the sentence on proper aggravating and mitigating factors, a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court." *People v. Dowding*, 388 Ill. App. 3d 936, 943 (2009). The court, when "announcing its sentencing decision, is not required to refrain from any mention of the factors that constitute elements of an offense, and the mere reference to the existence of such a factor is not reversible error." *People v. Brown*, 2018 IL App (1st) 160924, ¶ 22. "Sentencing hearings do not occur in a vacuum, and the duty to impose a fair sentence entails an explanation of the court's reasoning in the context of the offenses of which a defendant has been convicted." *Sauseda*, 2016 IL App (1st) 140134, ¶ 15 (stating a trial court's comments on the nature and circumstances of a defendant's crime does not necessarily result in improperly using elements of the offense as factors in aggravation).

¶ 62    When read in context, the trial court found defendant's conduct caused or threatened serious harm. At sentencing, a "court need not unrealistically avoid any mention of such inherent factors, treating them as if they did not exist." *People v. O'Toole*, 226 Ill. App. 3d 974, 992 (1992). We note Boyce's testimony established on multiple occasions that her fear, *i.e.*, the threat of serious harm from defendant, came from his possession of her gun. There is no evidence refuting Boyce's claim defendant's possession of the gun threatened serious harm to her. Furthermore, the firearm was discovered loaded, thereby increasing the threat defendant

posed by possessing it. See *People v. Cross*, 2019 IL App (4th) 170481-U, ¶ 46 (finding a loaded firearm was not inherent to the offense of unlawful possession of a weapon by a felon and "dramatically increased the threat of harm"). Finally, defendant relies heavily on the court's statement that his criminal history was not the worst it had seen to show it placed little to no value on this aggravating factor as the basis for his increased sentence. We find this argument presumptuous at best. Put simply, defendant has failed to show a clear or obvious error, let alone plain error. Accordingly, we honor his forfeiture of this issue.

¶ 63　　　　Ultimately, we conclude defendant forfeited his improper sentencing factor claim and that the trial court imposed a reasonable sentence based on the circumstances of the offense. That is, we find the court did not abuse its discretion when it imposed a seven-year sentence.

¶ 64　　　　　　　　　　　　III. CONCLUSION

¶ 65　　　　For the reasons stated, we affirm the trial court's judgment.

¶ 66　　　　Affirmed.