NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 240437-U

NO. 4-24-0437

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 29, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| WARREN MONTGOMERY, | ) | No. 21CF508 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | J. Jason Chambers, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Lannerd and Grischow concurred in the judgment.

**ORDER**

¶ 1   *Held*:   (1) Defendant has not carried his burden of clearly showing that the statute defining the offense of unlawful possession of a weapon by a felon is unconstitutional on its face and as applied to him.

(2) Defendant has not carried his burden of clearly showing that statutory provisions defining the offense of aggravated unlawful possession of a weapon are unconstitutional on their face.

¶ 2   In the circuit court of McLean County, a jury found defendant, Warren Montgomery, guilty of three counts of an indictment, including count I, unlawful possession of a weapon by a felon (see 720 ILCS 5/24-1.1(a) (West 2020)). For count I, the court sentenced him to eight years' imprisonment.

¶ 3   Defendant appeals. He argues that, under the second amendment to the United States Constitution (U.S. Const., amend. II), an amendment made applicable to the states by the fourteenth amendment (U.S. Const., amend. XIV), the statutory provision defining the offense of

unlawful possession of a firearm by a felon, section 24-1.1(a) of the Criminal Code of 2012 (Code) (720 ILCS 5/14-1.1(a) (West 2020)), is unconstitutional on its face and as applied to him. He further argues that statutory provisions he previously was convicted of violating and that were the legal basis for his prior status as a felon—namely, subsections (a)(1) and (3)(I) of section 24-1.6 of the Code (720 ILCS 5/24-1.6(a)(1), (a)(3)(I) (West 2018)), which define the offense of aggravated unlawful possession of a weapon—are, on their face, unconstitutional under the second amendment. He requests that we vacate both convictions.

¶ 4                                    I. BACKGROUND

¶ 5         The jury trial on the charge of unlawful possession of a weapon by a felon (among other charges) took place on August 15 and 16, 2023. Evidence adduced at the trial tended to prove the following facts.

¶ 6         On May 2, 2021, at about 1:30 a.m., in Bloomington, Illinois, a city police officer, Taylor Hallatt, saw a silver Audi sedan turn without using a turn signal, weave within lanes, and run a stop sign. Hallatt, who was in full uniform, turned on the emergency lights of his squad car and pulled the Audi over. He walked over to the driver's side of the Audi and saw that the Audi had only one occupant, defendant. Hallatt explained to defendant why he had pulled him over and asked him for identification. At first, Hallatt received no response or reaction from defendant. When Hallatt repeated his request for identification, defendant pointed to a nearby parking lot and said he was going to pull into that lot because he felt unsafe where they were parked. Hallatt rejected defendant's suggestion of relocating to the parking lot. Then, noticing that the Audi was still in drive, he told defendant to put it in park. Instead of putting the Audi in park, defendant drove away from the traffic stop. He did not drive to the parking lot; he just drove away.

¶ 7            Because the Bloomington Police Department had a safety policy of pursuing vehicles only if a forcible felony had been committed, Hallatt did not pursue defendant. Instead, he radioed other police officers in the area and described defendant, the Audi, and its direction of travel. A few minutes later, Hallatt heard on the radio that the Audi had crashed. Upon arriving at the scene of the crash, Hallatt assisted with taking defendant into custody.

¶ 8            A pedestrian, Anthony Morelli, saw the crash happen. He testified that, at about 1:30 a.m. on May 2, 2021, he was walking home from a tavern when he saw a speeding car run two stop lights and collide with a city bus. As Morelli approached the car, he saw the driver get out, run to the side of the road where it intersected with an alley, and then return to the car. When the police arrived, Morelli told them what he had seen.

¶ 9            Another Bloomington police officer, Andrew Chambers, testified that, with the help of a dog, he searched the alley near defendant's wrecked car. At a detached garage near the entrance to the alley, the dog turned its head and tried to climb up the wall of the garage. Chambers found a ladder nearby, leaned it against the garage, climbed up, and saw, on the flat roof of the garage, a pistol.

¶ 10            The Bloomington police took the pistol to the Illinois State Police for examination. Dustin Johnson, a forensic scientist with the Illinois State Police, testified he test-fired the pistol and found it was in working order.

¶ 11            This May 2, 2021, incident in Bloomington was not the first time defendant was armed with a pistol during a traffic stop. Dylan Short, a police officer with the University of Illinois in Champaign-Urbana, Illinois, testified that, at about 3 a.m. on August 24, 2018, he was on patrol in a marked squad car and in full uniform when he pulled over a car on the 400 block of University Avenue for a traffic violation. Upon smelling the odor of burnt cannabis drifting

out of the pulled-over car, he ordered all four occupants to get out, including defendant, who was a rear seat passenger. After exiting the car, defendant consented to a frisk. As Short patted him down for weapons, he felt a hard object on defendant's right thigh, tucked under the waistband of his underwear. Short could tell it was a pistol. He asked defendant if the pistol was his, and defendant answered in the affirmative. Short told defendant not to move, but defendant tried to get away. Short and another police officer wrestled defendant to the ground, and Short removed from defendant's underwear a silver pistol with a black handle.

¶ 12　　　　The State presented a certified copy of the resulting prior conviction from Champaign County case No. 18-CF-1194, a Class 4 felony of aggravated unlawful possession of a weapon (720 ILCS 5/24-1.6(a)(1), (a)(3)(I) (West 2018)). (In the record, this prior felony is called "aggravated unlawful use of a weapon." According to section 24-1.6 (*id.* § 24-1.6), though, the correct name of the offense is aggravated unlawful possession of a weapon.) The parties stipulated to this prior felony conviction.

¶ 13　　　　The circuit court instructed the jury that, to find defendant guilty of unlawful possession of a weapon by a felon, the State had to prove two propositions: (1) "That the defendant knowingly possessed a firearm" and (2) "That the defendant had previously been convicted of the offense of aggravated unlawful use of a weapon." After being so instructed, the jury found defendant guilty of unlawful possession of a weapon by a felon.

¶ 14　　　　　　　　　　　　　　II. ANALYSIS

¶ 15　　　　A. The Prior Felony Conviction: Aggravated Unlawful Possession of a Weapon

¶ 16　　　　In an appeal, we should decide only the issues that we must decide to resolve the appeal. See *People v. Manskey*, 2016 IL App (4th) 140440, ¶ 87. This policy of judicial restraint is especially important when the issues are constitutional; we should reach only the constitutional

issues we have to reach. See *People v. Bass*, 2021 IL 125434, ¶ 30. If, as defendant contends, the statutory provisions defining the offense of aggravated unlawful possession of a weapon as charged in case No. 18-CF-1194 (see 720 ILCS 5/24-1.6(a)(1), (a)(3)(I) (West 2018)) are unconstitutional, his previous conviction of that offense would have to be treated as nonexistent. See *In re N.G.*, 2018 IL 121939, ¶ 42. It would further follow that an element of unlawful possession of a weapon by a felon, namely, that the "person has been convicted of a felony" (720 ILCS 5/24-1.1(a) (West 2020)), would be unproven since, judging by the jury instructions and the presentence investigation report, defendant had no prior felony conviction other than that of aggravated unlawful possession of a weapon. If, on the grounds of unconstitutionality, this previous felony conviction effectively did not exist, the conviction on count I in the present case would have to be reversed on the grounds of insufficient evidence—regardless of whether the statutory provision defining the offense of unlawful possession of a weapon by a felon (see *id.*) is unconstitutional.

¶ 17        Therefore, with a view to deciding only what we must decide—and avoiding constitutional issues that can be avoided—we take up, initially, the question of whether subsections (a)(1) and (a)(3)(I) of the Code (720 ILCS 5/24-1.6(a)(1), (a)(3)(I) (West 2018)) violate the second amendment.

¶ 18        First, we need to clear up some confusion about which subsections of section 24-1.6 are the relevant topic of discussion. Subsection (a)(3)(I) is the provision invoked in count II of the information in case No. 18-CF-1194 (along with subsection (a)(1)). A copy of the information from case No. 18-CF-1194 is included in People's exhibit No. 14 in the present case. Count II of the information alleged that defendant committed aggravated unlawful possession of a weapon in that, on August 24, 2018,

"defendant, a person under 21 years of age, knowingly carried concealed on or about his or her person a handgun, namely a Cobra FS .380 pistol at a time when he was not on his own land, or in his own abode, or in his own fixed place of business."

Count I of the information charged defendant with aggravated unlawful possession of weapon on an alternative theory, under subsections (a)(3)(A-5) and (a)(3)(C) of section 24-1.6 (*id.* § 24-1.6(a)(3)(A-5), (a)(3)(C)). Count I alleged that, on August 24, 2018, defendant carried a firearm and he had "not been issued a currently valid license under the Firearm Concealed Carry Act nor ha[d] he been issued a currently valid Firearm Owner's Identification Card." Also included in People's exhibit No. 14 are the docket sheets from case No. 18-CF-1194. According to the docket entries, defendant pleaded guilty to count II of the information, and the remaining counts, including count I, were dismissed. The sentencing order from case No. 18-CF-1194 also is included in People's exhibit No. 14 in the present case. According to the sentencing order, which imposed 24 months' probation, the circuit court found that defendant had committed aggravated unlawful possession of a weapon "in the manner and form set forth in Count 2 of the information." We point out this distinction between count I, which was dismissed, and count II, to which defendant pleaded guilty, because in his brief in the present case, defendant cites the page of People's exhibit No. 14 on which count I of the information is found. Also, he cites section 24-1.6(a)(3)(A-5) and refers to a "Firearm Concealed Carry license." Apparently, he forgets that count I was dismissed and that it was count II to which he pleaded guilty.

¶ 19       Count II in case No. 18-CF-1194 charged defendant with aggravated unlawful possession of a weapon as defined in subsections (a)(1) and (a)(3)(I) of the Code (*id.* § 24-1.6(a)(1), (a)(3)(I)). Those statutory provisions read as follows:

"(a) A person commits the offense of aggravated unlawful possession of a weapon when he or she knowingly:

(1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm; ***

*** and

(3) One of the following factors is present:

* * *

(I) The person possessing the weapon was under 21 years of age and in possession of a handgun, unless the person under 21 is engaged in lawful activities under the Wildlife Code [(520 ILCS 5/1.1 *et seq.* (West 2018))] or described in subsection 24-2(b)(1), (b)(3), or 24-2(f) [(720 ILCS 5/24-2(b)(1), (3), 24-2(f) (West 2018))]." *Id.*

The provisions of the Code referenced at the end of that quotation pertain to "members or patrons" of "established target ranges" (*id.* § 24-2(b)(1), (f)) and soldiers on duty (*id.* § 24-2(g)(1)). Thus, merely by having a handgun on or about his or her person, a person younger than 21 commits the offense of aggravated unlawful possession of a weapon, a Class 4 felony (*id.* § 24-1.6(d)(1)), unless he or she is engaged in lawful activities under the Wildlife Code; is using an established shooting range; is a soldier on duty; or is on his or her land, in his or her legal

dwelling or established place of business, or on the land or in the legal dwelling of another as an invitee with permission.

¶ 20        According to documents in the record, including the indictment and the presentence investigation report, defendant was born on October 19, 1997. Therefore, on August 24, 2018, when he committed the previous felony of aggravated unlawful possession of a weapon, he was 20 years old. He contends that this prior conviction "should not survive" the United States Supreme Court's interpretation of the second amendment in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), a case holding that "the possession of a firearm in public was the crux of the right to bear arms."

¶ 21        The State makes two arguments against defendant's challenge to the constitutionality of the statute defining the offense of aggravated unlawful possession of a weapon.

¶ 22        First, the State argues that defendant has "forfeited *** his challenge to his prior conviction for aggravated unlawful use of a weapon *** by raising it for the first time on appeal." That argument is difficult to square with case law. The supreme court and the appellate court have repeatedly held that a challenge to the constitutionality of a statute may be raised at any time (see *People v. McCarty*, 223 Ill. 2d 109, 123 (2006); *People v. Zeisler*, 125 Ill. 2d 42, 46 (1988)), including for the first time on appeal (see *People v. Neely*, 2013 IL App (1st) 120043, ¶ 8; *People v. Curtis*, 407 Ill. App. 3d 1042, 1047 (2011); *People v. Atkins*, 2024 IL App (1st) 221138-U, ¶ 11).

¶ 23        Second, the State contends that "the record is insufficiently developed regarding the underlying facts of defendant's prior felony conviction for [aggravated unlawful possession of a firearm]." The State continues, "[T]here were no specific factual findings made by the trial

court about defendant's prior conviction which would be relevant to defendant's current *Bruen* claim." Defendant claims, however, that the statutory provisions under which he was convicted of aggravated unlawful possession of a weapon are "facially unconstitutional," not unconstitutional as applied to him. It is for an as-applied claim that the "record [must] be sufficiently developed on the defendant's specific facts and circumstances," not for a facial claim. (Internal quotation marks omitted.) *People v. Stokich*, 2024 IL App (4th) 240192-U, ¶ 48.

¶ 24　　　　We note that, some seven years before the issuance of *Bruen*, in *People v. Mosley*, 2015 IL 115872, ¶ 38 (a case that neither party cites), the Illinois Supreme Court held that subsection (a)(3)(I), on its face, did not violate the second amendment rights of persons who were 18 to 20 years old. Although it could be questioned whether the historical evidence cited in the cases on which *Mosley* relied would satisfy *Bruen* (see *id.* ¶ 35), we lack authority to review decisions by the Illinois Supreme Court. Only the Illinois Supreme Court can overrule or modify its opinion in *Mosley*, and until it does so, we are bound by *Mosley*'s "conclu[sion] that *** subsection (a)(3)(I) [does not] violate[ ] the second amendment rights of *** 18- to-20-year-old persons" (*id.* ¶ 38). See *Yakich v. Aulds*, 2019 IL 123667, ¶ 13.

¶ 25　　　　B. The Present Conviction: Unlawful Possession of a Weapon by a Felon

¶ 26　　　　Because we must follow *Mosley* by holding that the statutory provisions under which defendant was convicted of aggravated unlawful possession of a weapon (see 720 ILCS 5/24-1.6(a)(1), (a)(3)(I) (West 2018)) are facially constitutional, we proceed to the further question of whether the statutory provisions under which he was convicted of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2020)) are constitutional, facially and as applied to him. Section 24-1.1(a) reads as follows:

"It is unlawful for a person to knowingly possess on or about his person or on his land or in his own abode or fixed place of business any weapon prohibited under Section 24-1 of this Act [(720 ILCS 5/24-1 (West 2020))] or any firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction. This Section shall not apply if the person has been granted relief by the Director of the Illinois State Police under Section 10 of the Firearm Owners Identification Card Act [(430 ILCS 65/10 (West 2020))]." *Id.*

Defendant maintains that, under the second amendment as interpreted by *Bruen*, this statutory provision is unconstitutional on its face. He further maintains that because his prior felony conviction was for a nonviolent offense instead of for a violent offense, this statutory provision, as applied to him, is unconstitutional under the second amendment.

¶ 27        On the authority of *Stokich*, 2024 IL App (4th) 240192-U, ¶ 49, the State contends that defendant has "forfeited his as-applied challenge to [section 24-1.1(a)]" because the record is insufficiently developed for us to evaluate that challenge. In the record before us, however, we have the testimony of Hallat, Morelli, Chambers, and Johnson describing the facts and circumstances of defendant's commission of unlawful possession of a weapon by a felon. We also have count II of the information from case No. 18-CF-1194, the count charging the prior felony, and we have the testimony of Short recounting exactly how defendant committed aggravated unlawful possession of a weapon in that case. We have the docket sheets stating that defendant pleaded guilty to that count and that the circuit court accepted the guilty plea, thereby effectively making a finding that defendant committed the aggravated unlawful possession of a weapon charge to which he pleaded guilty. Further, we have the sentencing order imposing probation for that conviction on count II, and we have documentation of defendant's date of

birth, from which we can ascertain how old defendant was when he committed the offense. It is unclear in what ways the record would need further development for us to be able to address defendant's *Bruen* claim that, as applied to him, the statutory provisions defining the offense of unlawful possession of a weapon by a felon (see 720 ILCS 5/24-1.1(a) (West 2020)) are unconstitutional. See *People v. Martin*, 2018 IL App (1st) 152249, ¶ 13 ("We fail to see what further facts would be necessary to adduce at an evidentiary hearing, and notably, the State fails to identify any additional facts not in the record that would preclude our review of this issue."); *People v. Moore*, 2025 IL App (4th) 240444-U, ¶ 57 ("[The] [d]efendant's claim this statute is unconstitutional as applied to him requires no additional factual development, as it can be decided based on pertinent case law and the fact that, as stipulated to at trial, he has been convicted of a predicate felony offense."). The record enables us to decide the merits of that claim.

¶ 28        Defendant acknowledges that, in cases such as *People v. Burns*, 2024 IL App (4th) 230428, ¶ 18, *People v. Kelley*, 2024 IL App (1st) 230569, ¶ 26, and *People v. Baker*, 2023 IL App (1st) 220328, ¶ 37, the appellate court found no merit in arguments that section 24-1.1(a) was facially unconstitutional under *Bruen*. Defendant contends, however, that those decisions piled an excessive weight of implication upon a repeated remark in *Bruen* that " 'law-abiding citizen[s]' " had a second amendment right to carry arms in public for self-defense. *Burns*, 2024 IL App (4th) 230428, ¶ 14 (quoting *Bruen*, 597 U.S. at 8-9); *Kelley*, 2024 IL App (1st) 230569, ¶ 16 (quoting *Bruen*, 597 U.S. at 9-10)); *Baker*, 2023 IL App (1st) 220328, ¶ 37 (quoting *Bruen*, 597 U.S. at 71). In *Baker*, 2023 IL App (1st) 220328, ¶ 37, and in cases following *Baker*, the appellate court elaborated on that remark to hold that persons with a felony conviction were outside the protection of the second amendment. However, in *United States v. Rahimi*, 602 U.S.

680, 701-02 (2024), the Supreme Court rejected the government's argument that the plaintiff could be disarmed simply because, to use a term from *Bruen*, 597 U.S. at 70, and *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008)), he was not " 'responsible.' " The Supreme Court explained in *Rahimi*:

> "In *Heller* and *Bruen*, we used the term 'responsible' to describe the class of ordinary citizens who undoubtedly enjoy the Second Amendment right. [Citations.] But those decisions did not define the term and said nothing about the status of citizens who were not 'responsible.' The question was simply not presented." *Id.* at 701-02.

¶ 29    In defendant's view, *Bruen*'s use of the term "law-abiding" was as vague and unrevealing as its use of the term "responsible" and could hardly serve as a test for determining who was under the protection of the second amendment. Defendant argues, therefore, that, after *Rahimi*, decisions such as *Burns*, *Baker*, and *Kelley*, with their heavy reliance on the nebulous concept of law-abidingness, "are no longer persuasive."

¶ 30    Even if defendant were correct in criticizing our reliance on law-abidingness, we still would be bound by the Supreme Court's statement in *Heller* that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Heller*, 554 U.S. at 626.

¶ 31    In *Heller*, the respondent

> "[sought], on Second Amendment grounds, to enjoin the [District of Columbia] from enforcing [a] bar on the registration of handguns, [a] licensing requirement insofar as it prohibit[ed] the carrying of a firearm in the home without a license, and [a] trigger-lock requirement insofar as it prohibit[ed] the use of functional

firearms within the home." (Internal quotation marks omitted.) *Id.* at 575-76. The district court dismissed the respondent's complaint. *Id.* at 576. The Court of Appeals for the District of Columbia, however, reversed the district court's judgment, holding that "the Second Amendment protect[ed] an individual right to possess firearms and that the city's total ban on handguns, as well as its requirement that firearms in the home be kept nonfunctional even when necessary for self-defense, violated that right." *Id.*

¶ 32          In their appeal to the Supreme Court of the United States, the petitioners—the District of Columbia and its mayor—argued that "[t]he Second Amendment was not intended to tie the hands of government in providing for public safety." Brief for Petitioners at 58, *District of Columbia v. Heller*, 554 U.S. 570 (2008) (No. 07-290), 2008 WL 102223, at *58. The Supreme Court acknowledged the legitimacy of this concern for public safety. At the conclusion of its opinion in *Heller*, the Supreme Court wrote:

> "We are aware of the problem of handgun violence in this country, and we take seriously the concerns raised by the many *amici* who believe that prohibition of handgun ownership is a solution. The Constitution leaves the District of Columbia a variety of tools for combating that problem, including some measures regulating handguns, see *supra*, at 2816-2817, and n. 26. But the enshrinement of constitutional rights necessarily takes certain policy choices off the table. These include the absolute prohibition of handguns held and used for self-defense in the home." *Heller*, 554 U.S. at 636.

At the pages of its opinion that the Supreme Court cited in that quotation, the Supreme Court stated, "Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding

prohibitions on the possession of firearms by felons." *Id.* at 626. In the footnote that the Supreme Court cited, the Supreme Court added, "We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive." *Id.* at 626 n.26.

¶ 33　　　　Granted, by describing a regulatory measure as presumptively lawful, the Supreme Court did not say anything unusual. *All* statutes are "presumed to be constitutional," which is merely to say that "[t]he party challenging the validity of a statute has the burden of clearly establishing its constitutional invalidity." *People v. Webb*, 2019 IL 122951, ¶ 7. This observation, though commonplace, leads us to the resolution of defendant's appeal. Defendant cannot *clearly* establish the constitutional invalidity of the Illinois felon disarmament statute, section 24-1.1(a), when the Supreme Court stated, in *Heller*, that the Constitution left the statutory disarmament of felons as a tool the District of Columbia could use to combat the problem of handgun violence. See *Heller*, 554 U.S. at 636.

¶ 34　　　　We acknowledge that the respondent in *Heller* was not a convicted felon who was challenging a felon disarmament statute. Yet, what the Supreme Court said in *Heller* about the constitutionality of prohibitions on the possession of firearms by felons did not seem a throwaway point. Granted, it is sometimes debatable whether a statement in a judicial opinion should be characterized as a mere *dictum*. A *dictum* is a comment in a judicial opinion that is "unnecessary to the disposition of the case." *People v. Williams*, 204 Ill. 2d 191, 206 (2003). Did the Supreme Court in *Heller* regard its comment about the constitutionality of felon disarmament statutes as necessary to the disposition of the case? The Supreme Court seemed to regard the comment as important. After all, the Supreme Court said it "[took] seriously" the concern about handgun violence as an objection to overruling the District of Columbia's handgun ban (*Heller*, 554 U.S. at 636), and the Supreme Court responded to that concern: the District of Columbia had

a constitutional tool at its disposal for combating that problem, namely, "prohibitions on the possession of firearms by felons" (*id.* at 626). The Supreme Court appeared to regard the constitutional availability of felon disarmament as important to the credibility of its holding that banning handguns in the home violated the second amendment. Consequently, not every reasonable reader would understand the Supreme Court as making an unnecessary remark when the Supreme Court assured the District of Columbia that it could constitutionally prohibit felons from possessing guns. Subsequently, in *McDonald v. City of Chicago*, 561 U.S. 742, 750, 786 (2010), when holding that "the Second Amendment [was] fully applicable to the States," the Supreme Court seemed intent on enhancing the credibility of that holding as well by "repeat[ing] [the] assurance[ ]" that felon disarmament statutes are not thereby "imperil[ed]."

¶ 35        Even if this assurance in *Heller* was unnecessary to the disposition of the case and, hence, was a *dictum*, it was a judicial *dictum*: a "comment[ ] in a judicial opinion that [was] unnecessary to the disposition of the case, but involve[d] an issue briefed and argued by the parties," specifically, the District of Columbia and its mayor. *Williams*, 204 Ill. 2d at 206. The Illinois Supreme Court has held that "[j]udicial *dicta* have the force of a determination by a reviewing court and should receive dispositive weight in an inferior court." *Id.*

¶ 36        Assuming, for the sake of argument, that a point the *Heller* court made in support of its holding was a judicial *dictum*, we cannot logically use the two-part test of text and history in *Bruen* to undercut *Heller*'s judicial *dictum*. *Bruen*, after all, obtained the two-part test from *Heller*. As the Supreme Court put it in *Bruen*, "[t]he test that we set forth in *Heller* and apply today requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Bruen*, 597 U.S. at 26. Granted, we do not know the reasoning by which the Supreme Court found support in the historical record for

disarming felons—in that respect, the Supreme Court has not yet shown its work—but it would make no sense to use the two-part test from *Heller* to undermine the Supreme Court's pronouncement of constitutionality in *Heller* (by which we mean its pronouncement of the constitutionality of prohibiting felons from possessing firearms).

¶ 37    Therefore, in accordance with *Williams*, we give dispositive weight to *Heller*'s assurance that long-standing prohibitions on the possession of firearms by felons are constitutional, and we decide against defendant on his claim that section 24-1.1(a) is unconstitutional as applied to him. If the statute is constitutional as applied to defendant, the statute is not unconstitutional on its face, for there are circumstances—defendant's circumstances—in which application of the statute would be constitutional. See *Rahimi*, 602 U.S. at 693.

¶ 38                                III. CONCLUSION

¶ 39    For the foregoing reasons, we affirm the circuit court's judgment.

¶ 40    Affirmed.