NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 230162-U

NO. 4-23-0162

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 27, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| KELVIN G. LANGSTON, | ) | No. 19CF195 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Brendan A. Maher, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Presiding Justice DeArmond and Justice Turner concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, finding (1) the unlawful possession of a weapon by
a felon statute is constitutional under both the United States and Illinois
Constitutions, (2) defendant's as-applied challenge under the United States
Constitution was forfeited, and (3) the trial court's review of evidence not
admitted at trial was harmless error.

¶ 2    In December 2022, following a bench trial, the trial court convicted defendant,

Kelvin G. Langston, of unlawful possession of a weapon by a felon. 720 ILCS 5/24-1.1(a) (West

2018). On appeal, defendant argues (1) the unlawful possession of a weapon by a felon statute

violates the second amendment (U.S. Const., amend. II) both on its face and as applied to him

pursuant the United States Supreme Court's decision in *New York State Rifle & Pistole Ass'n,

Inc. v. Bruen*, 597 U.S. 1 (2022); (2) the statute violates article I, section 22 of the Illinois

Constitution (Ill. Const. 1970, art. I, § 22) both on its face and as applied to him because it

provides greater protection than the second amendment; and (3) he was denied due process when the trial court considered inculpatory evidence that was never admitted at trial. We affirm.

¶ 3                                                    I. BACKGROUND

¶ 4            In February 2019, the State charged defendant by indictment with unlawful possession of a weapon by a felon after having been previously convicted of aggravated unlawful use of a weapon. The State subsequently amended the indictment in October 2022 to allege defendant was previously convicted of leaving the scene of an accident involving death or personal injury. 720 ILCS 5/24-1.1(a) (West 2018). Defendant waived trial by jury and the matter proceeded to a bench trial in October 2022.

¶ 5            The trial court admitted a certified copy of defendant's conviction for leaving the scene of a motor vehicle accident involving death or personal injuries.

¶ 6            Police officer Jesse Geiken of the Rockford Police Department testified he was on patrol on January 21, 2019, when he observed defendant driving over the posted speed limit. Before initiating a traffic stop, he ran the vehicle's license plate. The check revealed the vehicle belonged to defendant. Geiken then performed a traffic stop of the vehicle. When Geiken approached the driver's side of the vehicle, defendant had both of his hands outside of the driver's side window. Geiken observed defendant's hands were shaking. Defendant gave Geiken his driver's license and proof of insurance. Geiken gave defendant's information to another officer on scene who is only identified in the record as "Officer Stec." Geiken viewed defendant's behavior as nervous and had his K-9 partner, Sully, conduct a free air sniff around the exterior of defendant's vehicle for the presence of narcotics. Sully gave a positive indication near the passenger's front door of defendant's vehicle. Douglas Hollyfield was seated in the passenger's seat. Geiken had defendant exit the vehicle and step to the rear of the vehicle, where

he performed a search of defendant's person. Geiken located a handgun in the right pocket of defendant's jacket. The firearm recovered from defendant's jacket was admitted into evidence over defendant's objection. On cross-examination, Geiken stated no narcotics were found in defendant's vehicle. Geiken and the other police officers present discussed whether Hollyfield made defendant take the gun because Hollyfield was currently on parole. Sergeant Bruce Voyles testified he performed a test fire on the firearm recovered from defendant, and confirmed the firearm was operational.

¶ 7    The trial court admitted People's Exhibit No. 3, a video from "squad 232" of a conversation between officers Geiken, "Stec," and Officer Schuster. Defendant stipulated to the video's admissibility. Defendant asked the court to review the "entire video." The State explained its exhibit, which was defendant's copy, contained three videos. Defendant clarified he was "not asking the Court to consider anything but what's considered squad video 232." Defendant stated the stipulation to the video was for the purpose of impeaching Geiken's testimony.

¶ 8    After the State and defendant rested, the trial court recessed the proceedings until it could view the video prior to closing arguments. After a series of delays, the court resumed the trial proceedings after reviewing the video.

¶ 9    Following closing arguments, the trial court recited the trial evidence, stating:

"Defense counsel then referenced People's Exhibit No. 3 containing the audio and video recording of the traffic stop on January 21st of 2019, noting that officers on scene were openly discussing whether the firearm belonged to the passenger, Douglas Hollyfield, due to the fact that officers knew that Hollyfield, the passenger, was on parole. When questioned by an officer while seated in the

back seat of the squad car, however, Hollyfield denied that [defendant] was taking the rap for him."

¶ 10    Defendant objected, stating Hollyfield's statements were not entered into evidence and were not a part of the stipulation to the State's evidence. After discussing the issue, the trial court stated, "I'll make it very, very clear that particular detail does not have a material impact on the Court's ultimate decision in this case. It is simply a fact of something that happened on the video."

¶ 11    Thereafter, the trial court found defendant guilty of unlawful possession of a weapon by a felon.

¶ 12    On December 20, 2022, defendant filed a motion for new trial, arguing, *inter alia*, the trial court erred when considering Hollyfield's statements in the video evidence. Following a February 2023 hearing, the court denied defendant's motion, reiterating that Hollyfield's statements were not material to its ultimate decision.

¶ 13    At the sentencing hearing, the trial court admitted defendant's presentence investigation report (PSI) into evidence with minor corrections. Neither party presented any further evidence. The PSI showed defendant was adjudicated a delinquent three times and had felony convictions for aggravated unlawful use of a weapon and attempted armed robbery, along with convictions for various other misdemeanor and traffic offenses. The court sentenced defendant to seven years' imprisonment.

¶ 14    This appeal followed.

¶ 15                              II. ANALYSIS

¶ 16    On appeal, defendant argues (1) the unlawful possession of a weapon by a felon statute violates the second amendment both on its face and as applied to him pursuant the United

States Supreme Court's decision in *Bruen*, (2) the same statute violates article I, section 22 of the Illinois Constitution both on its face and as applied to him because it provides greater protection than the second amendment, and (3) he was denied due process when the trial court considered inculpatory evidence that was never admitted at trial. We address each argument in turn.

¶ 17                    A. Second Amendment Facial Constitutional Challenge

¶ 18          In response to defendant's facial challenge, the State cites *People v. Boyce*, 2023 IL App (4th) 221113-U, where this court addressed the issue of whether the unlawful possession of a weapon by a felon statute violated the second amendment on its face. Therein, we stated:

> " 'The constitutionality of a statute is analyzed under well-settled principles. Statutes are presumed constitutional, and to rebut that presumption, the party challenging a statute's constitutionality has the burden of establishing a clear violation. [Citation.] A party raising a facial challenge to a statute faces a particularly heavy burden. [Citation.] A statute will be deemed facially unconstitutional only if there is no set of circumstances under which the statute would be valid. [Citation.] The particular facts related to the challenging party are irrelevant. [Citation.] If it is reasonably possible to construe the statute in a way that preserves its constitutionality, we must do so.' " *Id.* ¶ 12 (quoting *People v. Bochenek*, 2021 IL 125889, ¶ 10).

¶ 19          *Boyce* cited *People v. Baker*, 2023 IL App (1st) 220328, ¶ 37, for the proposition that "[t]he *Bruen* Court could not have been more clear that its newly announced test applied only to laws that attempted to regulate the gun possession of 'law-abiding citizens,' and not felons like [the] defendant." (Internal quotation marks omitted.) *Boyce*, 2023 IL App (4th) 221113-U, ¶ 14. In the case *sub judice*, much like in *Boyce*, defendant contends we discount the

"law-abiding citizens" language from *Bruen*. Defendant argues we interpret "law-abiding citizens" to include those who had been convicted of nonviolent felonies. However, *Bruen* specifically upheld an earlier statement from *District of Columbia v. Heller*, 554 U.S. 570 (2008), that courts should not " 'cast doubt on longstanding prohibitions on the possession of firearms by felons.' " *Bruen*, 597 U.S. at 81 (Kavanaugh, J., concurring, joined by Roberts, C.J.) (quoting *Heller*, 554 U.S. at 626). We find nothing in defendant's arguments that would persuade us to believe *Bruen* does not apply to felons *simpliciter*, and defendant provides no argument challenging the decision in *Boyce* or why this case is distinguishable from *Boyce*. Therefore, defendant has failed to show the statute is facially unconstitutional. *Boyce*, 2023 IL App (4th) 221113-U, ¶ 16.

¶ 20                    B. Second Amendment As-Applied Challenge

¶ 21           In response to defendant's as-applied challenge, the State argues defendant has forfeited the issue because he raised it for the first time on appeal and cites our decision in *People v. Ivy*, 2023 IL App (4th) 220646-U. Defendant initially contends a constitutional challenge may be raised at any time. This is simply not true. As we stated in *Ivy*:

> " 'The distinction between facial and as-applied constitutional challenges is critical.' *People v. Harris*, 2018 IL 121932, ¶ 38. An as-applied constitutional challenge requires a defendant show a 'statute is unconstitutional as it applies to the specific facts and circumstances' of that defendant. *Id.* Because an as-applied constitutional challenge depends on the specific facts and circumstances of that defendant, it is vital the record be sufficiently developed on the defendant's specific facts and circumstances for appellate review. *Id.* ¶ 39. 'A court is not capable of making an "as applied" determination of unconstitutionality when

- 6 -

there has been no evidentiary hearing and no findings of fact. [Citation.] Without an evidentiary record, any finding that a statute is unconstitutional "as applied" is premature.' (Internal quotation marks omitted.) *Id.*" *Id.* ¶ 14.

¶ 22 Nonetheless, defendant requests we consider his as-applied challenge in the interest of judicial economy because the record is sufficiently developed. Judicial economy, however, is not a substitution for an evidentiary record as articulated in *Harris* above. See *People v. House*, 2021 IL 125124, ¶ 31 (holding the appellate court erred when addressing an as-applied constitutional challenge pursuant to the proportionate penalties clause of the Illinois Constitution without a developed evidentiary record or factual findings).

¶ 23 In *Ivy*, we stated, "The trial court did not make any factual findings related to [the] defendant's prior convictions nor how they pertain to his present claim pursuant to *Bruen*. Given the record is minimal concerning [the] defendant's prior felonies \*\*\*, we find [the] defendant's as-applied constitutional challenge premature." *Ivy*, 2023 IL App (4th) 220646-U, ¶ 18. Here, like *Ivy*, the record only contains basic information about defendant's prior criminal history as contained in the PSI. We find nothing in the case at bar is distinguishable from *Ivy*. "Therefore, defendant has forfeited his as-applied constitutional challenge to his unlawful possession of a weapon by a felon conviction by raising it for the first time on appeal." *Id.*

¶ 24 C. Illinois Constitutional Challenges

¶ 25 In response to defendant's facial and as-applied challenges pursuant to article I, section 22 of the Illinois Constitution, the State, again, cites *Boyce*, where we addressed this very issue. Defendant provides no argument challenging the decision in *Boyce* or explaining why this case is distinguishable from *Boyce*. We note the same arguments from defendant here were presented in *Boyce*. "Accordingly, we find [the unlawful possession of a weapon by a felon

statute] is a proper exercise of police power, and thus defendant has not shown that [it] violates the Illinois Constitution on its face or as applied to him." *Boyce*, 2023 IL App (4th) 221113-U, ¶ 18.

¶ 26                                    D. Due Process Claim

¶ 27           Lastly, defendant argues the trial court's consideration of evidence showing Hollyfield's statements to officers—statements not admitted at trial—amounted to reversible error. "[T]he deliberations of the trial judge are limited to the record made before him in open court," and "any private investigation *** constitutes a denial to the defendant of the constitutional guarantee of a due process of law." *People v. Cooper*, 398 Ill. 468, 472 (1947); see *People v. Thunberg*, 412 Ill. 565, 567 (1952); see also *People v. McGeoghegan*, 325 Ill. 337, 355-56 (1927).

¶ 28           The State contends that any error was either invited or harmless. Regarding invited error, the State specifically argues defendant expressly asked the trial court to consider the video evidence stipulated to by defendant without specifying any limitations, knowing the disk contained other videos not admitted into evidence.

¶ 29           "[U]nder the doctrine of invited error, an accused may not request to proceed in one manner and then later contend on appeal that the course of action was error." (Internal quotation marks omitted.) *People v. Harvey*, 211 Ill. 2d 368, 385 (2004). "Illinois courts have applied the invited error doctrine in numerous cases to bar a defendant from claiming error in the admission of improper evidence where the admission was procured or invited by defendant." *Id.* at 386.

¶ 30           We note this issue could have been avoided had the parties taken a moment to edit the disk to include only the stipulated video before providing it to the trial court. Nonetheless, we

do not find the State's argument for invited error persuasive. While defendant provided the court with the video containing additional video evidence not admitted and asked it to view the "entire video," defendant clearly stated he was "not asking the Court to consider anything but what's considered squad video 232." Therefore, we decline to find this issue falls under the invited error doctrine.

¶ 31 After a series of delays in the trial proceedings, it is apparent from the record the trial court ultimately reviewed the entirety of videos on the disk submitted by defendant, and not just the video containing "squad video 232." Due process does not permit the trier of fact—in this case, the trial judge—to go outside the record, except for matters of which a court may take judicial notice, and the deliberations of the trial judge are limited to the exhibits offered and admitted into evidence and the record made before the trial judge in open court. *People v. Savage*, 5 Ill. 2d 296, 302 (1955). Therefore, we find a due process violation occurred. However, "[a]fter finding a due process violation, an appellate court must still consider whether the violation was harmless." *People v. Williams*, 2013 IL App (1st) 111116, ¶ 93. "An error is harmless only if the State can demonstrate, beyond a reasonable doubt, that the error did not contribute to the verdict." *Id.*

¶ 32 The State argues the error did not contribute to the trial court's verdict, citing the court's direct statement, upon reaching its verdict, "I'll make it very, very clear that [Hollyfield's statement] does not have a material impact on the Court's ultimate decision in this case. It is simply a fact of something that happened on the video." When ruling on the issue again on defendant's motion for a new trial, the court reiterated, "it wasn't material to the Court's decision on this particular case." Defendant contends the court's statements do not eliminate the fact the court, to some extent, considered Hollyfield's statements.

¶ 33        Further, the State argues defendant was found in actual possession of the firearm. Defendant argues this is not responsive to the issue raised at trial and on appeal that defendant's possession was not knowing because Hollyfield may have surreptitiously put the firearm into defendant's pocket.

¶ 34        At trial, the State was required to prove that defendant knowingly possessed a firearm and he had previously been convicted of leaving the scene of an accident involving death or personal injury. 720 ILCS 5/24-1.1(a) (West 2018). The record shows a certified copy of defendant's conviction for the felony offense of leaving the scene of an accident involving death or personal injury was properly admitted. The sole issue was whether defendant knowingly possessed the firearm recovered from his jacket pocket.

¶ 35        The evidence shows the firearm was found in defendant's actual possession in his jacket pocket. Defendant contends, on appeal, reasonable doubt exists because Hollyfield could have surreptitiously put the firearm into defendant's pocket. The officers on scene considered this possibility, but nothing other than this possibility was further developed by defendant during his cross-examination of Geiken. Defendant provides no evidence from the record to show Hollyfield placed the firearm in defendant's pocket. As a reviewing court, it is not our duty to "search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." (Internal quotation marks omitted.) *People v. Newton*, 2018 IL 122958, ¶ 24. Based on the evidence presented and *admitted* at trial, this was not a close case.

¶ 36        An evidentiary error is harmless where no reasonable probability exists that the trier of fact would have acquitted the defendant absent the error. *In re E.H.*, 224 Ill. 2d 172, 180 (2006). Given the trial court expressly stated its review of Hollyfield's statements did not impact

its verdict and the evidence is sufficient to support beyond a reasonable doubt defendant knowingly possessed the firearm while being a convicted felon, the error was harmless.

¶ 37                              III. CONCLUSION

¶ 38          For the reasons stated, we affirm the trial court's judgment.

¶ 39          Affirmed.