NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 240243-U

NO. 4-24-0243

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 11, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | McLean County |
| KEVIN ORLANDO THORNTON, | ) | No. 18CF356 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | William A. Yoder, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Knecht and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, finding (1) defendant did not make a substantial showing of a constitutional violation, namely actual innocence, and (2) the armed habitual criminal statute is not facially unconstitutional under the test set forth in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022).

¶ 2    In January 2024, the trial court granted the State's motion to dismiss the amended postconviction petition of defendant, Kevin Orlando Thornton, during the second stage of the proceedings under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 to 122-7 (West 2022)).

¶ 3    On appeal, defendant's argument is twofold: (1) the trial court erred in dismissing his petition because he made a substantial showing of actual innocence and (2) Illinois's armed habitual criminal (AHC) statute (720 ILCS 5/24-1.7(a) (West 2018)) is facially unconstitutional under the test set forth in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022).

¶ 4                          I. BACKGROUND

¶ 5          This case arose from events that took place in Bloomington, Illinois, on April 8, 2018. Defendant went to F.N.'s apartment, where they engaged in consensual sexual activity. At some point, F.N. saw defendant with a gun, she became frightened, she ran towards the door, defendant followed her, and she maneuvered him out of the apartment. Police found defendant nude and hiding in the indoor common area near F.N.'s apartment. Police saw the handle of a gun poking out from under a floor mat outside F.N.'s door. Police processed and examined the loaded gun—a Smith & Wesson .38-caliber revolver. Police swabbed the gun handle and trigger to collect DNA, but the State did not submit the swab for testing. Police found no fingerprints on the gun or the ammunition. The State charged defendant with various counts, and the matter proceeded to a jury trial.

¶ 6          In July 2018, a jury found defendant guilty of armed violence (720 ILCS 5/33A-2(a) (West 2018)) and being an AHC (720 ILCS 5/24-1.7(a) (West 2018)), and, in October 2018, the trial court imposed concurrent sentences of 18 and 10 years, respectively. This court affirmed defendant's convictions and sentence in November 2020. *People v. Thornton*, 2020 IL App (4th) 180681-U.

¶ 7          Meanwhile, defendant filed various motions *pro se* in the trial court. On November 2, 2018, defendant filed a "Petition for Forensic Testing under ILCS 5/116-3 or In the Alternative Order Results from a Swab Applicator." Defendant requested an order to test the DNA collected from the gun found outside F.N.'s door, arguing the testing would exonerate him. The court granted defendant's motion on February 21, 2019, and the State sent the swab to the Illinois State Police laboratory in March 2019.

¶ 8          On September 24, 2019, defendant filed a postconviction petition, alleging actual innocence based on newly discovered evidence and ineffective assistance of counsel. Defendant

attached an affidavit from Andrew Coe, which stated F.N. tried to sell Coe a "silver 38 revolver" in 2014. Defendant maintained this evidence "directly contradicts" F.N.'s trial testimony and establishes the gun police found on April 8, 2018, outside F.N.'s apartment belongs to her and not to defendant. On December 19, 2019, the trial court reviewed the petition and found the "allegations in the petition, which must be taken as true and liberally construed, present the gist of a constitutional claim." The court, therefore, advanced the petition from first- to second-stage review under the Act and appointed defendant counsel. As the case was pending in the trial court, defendant elected to proceed *pro se* and filed various motions to compel and requests for expert witnesses. The trial court denied all defendant's motions except for a motion to compel the State to produce documents in compliance with Illinois Supreme Court Rule 417(b) (eff. Mar. 1, 2001).

¶ 9        On February 21, 2021, defendant filed an amended postconviction petition. In this petition, he abandoned his ineffective-assistance-of-counsel claim and maintained his claim of actual innocence based on newly discovered evidence. The petition identified two pieces of newly discovered evidence: Andrew Coe's affidavit and the DNA evidence. In his affidavit, Coe stated F.N. tried to sell him two guns in September 2014. He described one gun as an "all black 9 mm and the other one was a silver 38 revolver in a holster." Defendant argued, "Here, new evidence by Coe establishes that [F.N.] had possessed the handgun involved in this case 4 years prior to this case occurring." He went on to claim, "The new evidence clearly identifies that [F.N.] is the owner of the handgun involved in this case" and it "undercuts [F.N.'s] trial testimony." As for the new DNA evidence from the gun, the petition included test results from the Illinois State Police laboratory dated September 27, 2019. The "results show[ed] [the] number of contributors [to be] at least 2, MAJOR FEMALE 22 (Short [Tandem] Repeats) Loci,

MINOR MALE 23 STR Loci[,] additional minor(s): Inconclusive." Defendant attached the lab report to the petition. He maintained the DNA evidence was relevant, material, and "previously unavailable." Defendant insisted the DNA results "show that there was stronger femal[e] contact pressure applied to the firearm in this case which increases the probability that a femal[e] handled the firearm than a male." He argued, "The DNA testing has yield[ed] favorable evidence for Petitioner's meritorious claim of actual innocence." Within the DNA argument, defendant couched a dual due process and fourth amendment (U.S. Const., amend. IV) violation because law enforcement did not collect his DNA in the days after the crime and the State prosecuted him without DNA results.

¶ 10 The State moved to dismiss the amended petition on March 19, 2021. The State argued Coe's affidavit served merely to impeach F.N. and could not serve as a basis for granting a new trial. The State offered a two-pronged argument against the DNA evidence. First, the State argued defendant forfeited the claim by not raising it in his direct appeal. Second, it argued the DNA evidence was not conclusive and would not undermine the jury's guilty verdict.

¶ 11 On October 31, 2023, the trial court conducted a hearing on the State's motion to dismiss the amended petition. After lengthy arguments from the parties, the court took the matter under advisement. It issued a written order dismissing the amended petition on January 10, 2024.

¶ 12 This appeal followed.

¶ 13 II. ANALYSIS

¶ 14 Defendant argues: (1) "Taken as true and liberally construed, [his] postconviction petition made a substantial showing of actual innocence where he presented evidence that DNA testing showed that the gun had a major female contributor of DNA, thus supporting his statements all along that the gun was not his, but rather F.N.'s," and (2) "Under the test set forth

- 4 -

in [*Bruen*], Illinois's [AHC] statute is inconsistent with this nation's historical tradition of firearm regulation, and is therefore facially unconstitutional." We disagree, taking each issue in turn.

¶ 15                                   A. Dismissal of the Postconviction Petition

¶ 16        The Act "establishes a procedure for determining whether a criminal defendant was convicted in substantial violation of his or her constitutional rights." *People v. Collins*, 202 Ill. 2d 59, 65 (2002) (citing 725 ILCS 5/122-1(a) (West 2000)). To survive a motion to dismiss from the State at the second stage of postconviction proceedings and advance to a third-stage evidentiary hearing, the defendant "must make 'a substantial showing of a violation of constitutional rights.' " *People v. Wingate*, 2015 IL App (5th) 130189, ¶ 24 (quoting *People v. Coleman*, 183 Ill. 2d 366, 381 (1998)). Put differently, second-stage dismissal is only appropriate if the petition's allegations, "when 'liberally construed in light of the trial record,' cannot support a substantial showing of a constitutional violation." *People v. Lamar*, 2015 IL App (1st) 130542, ¶ 12 (quoting *People v. Hall*, 217 Ill. 2d 324, 334 (2005)). The substantial-showing standard " 'is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, *which if proven* at an evidentiary hearing, would entitle petitioner to relief.' " (Emphasis in original.) *Lamar*, 2015 IL App (1st) 130542, ¶ 13 (quoting *People v. Domagala*, 2013 IL 113688, ¶ 35).

¶ 17        "When a trial court dismisses a petition for postconviction relief at the second stage of proceedings," as it did here, this court "review[s] that dismissal *de novo*, taking as true all well-pleaded facts that are not positively rebutted by the trial record." *Wingate*, 2015 IL App (5th) 130189, ¶ 24 (citing *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006)). Accordingly, we "may affirm a trial court's dismissal at the second stage on any grounds substantiated by the

record, regardless of the trial court's reasoning." *People v. Snow*, 2012 IL App (4th) 110415, ¶ 17.

¶ 18        Illinois law allows for defendants to file a postconviction petition " 'assert[ing] a freestanding claim of actual innocence based on newly discovered evidence.' " *Wingate*, 2015 IL App (5th) 130189, ¶ 24 (quoting *People v. Ortiz*, 235 Ill. 2d 319, 333 (2009)). Such a petition presents the question of whether the newly discovered evidence "places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt." *People v. Robinson*, 2020 IL 123849, ¶ 48. Consequently, to prove an actual innocence claim in postconviction proceedings, "the supporting evidence must be (1) newly discovered, (2) material and not cumulative, and (3) of such conclusive character that it would probably change the result on retrial." *People v. Robinson*, 2020 IL 123849, ¶ 47. This case turns upon the third element, which our supreme court described as "the most important element of an actual innocence claim." *Robinson*, 2020 IL 123849, ¶ 47. "[T]he conclusive character element refers to evidence that, when considered along with the trial evidence, would *probably* lead to a different result." (Emphasis added.) *Robinson*, 2020 IL 123849, ¶ 47. Accordingly, our analysis centers upon "[p]robability[ ] rather than certainty" when assessing "whether the fact finder would reach a different result after considering the prior evidence along with the new evidence." *Robinson*, 2020 IL 123849, ¶ 48. In other words, "the conclusive-character element requires only that the petitioner present evidence that places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt." *Robinson*, 2020 IL 123849, ¶ 56.

¶ 19        Defendant identified two pieces of newly discovered evidence to support his actual innocence claim, namely, Coe's affidavit and the DNA evidence. Even assuming this evidence is newly discovered, material, and not cumulative, we hold neither piece of evidence is

"of such conclusive character that it would probably change the result on retrial." *Robinson*, 2020 IL 123849, ¶ 47. Taking the affidavit first, we note there is very little conclusive information in Coe's statement. He claimed F.N. tried to sell him a "silver 38 revolver" in September 2014. Nothing in the trial record positively rebuts Coe's claim, so we take it as true. See *Robinson*, 2020 IL 123849, ¶ 45. But even so, there is nothing conclusive about Coe's statement. He does not maintain the gun F.N. tried to sell him was the same gun police found outside F.N.'s door on April 8, 2018. Defendant asks us to assume the guns were the same. But even making that assumption does not imbue Coe's affidavit with such conclusive character that a new trial with the old and new evidence would have a result other than a guilty verdict.

¶ 20      To prove defendant guilty of armed violence, the State had to show defendant, "while armed with a dangerous weapon, ***commit[ed] any felony defined by Illinois Law" (720 ILCS 5/33A-2(a) (West 2018)), namely, intimidation (720 ILCS 5/12-6(a)(1) (West 2018)). For purposes of the armed violence statute, the "armed" element is met when the State proves a defendant possessed a weapon. It does not require he own it. To be sure, we have said "a defendant violates this statute by simply having possession of a firearm during the commission of another predicate felony." *People v. Anderson*, 2018 IL App (4th) 160037, ¶ 27. To secure a conviction on the AHC charge, the State had to prove defendant received, sold, possessed, or transferred any firearm after having been convicted of two or more predicate offenses. See 720 ILCS 5/24-1.7(a) (West 2018). The State specifically alleged defendant "knowingly possessed a firearm, a handgun," and had two prior convictions for delivery of a controlled substance.

¶ 21      Defendant's convictions, therefore, turned upon him possessing a gun. "Possession of a firearm may be actual or constructive." *People v. Hilson*, 2023 IL App (5th) 220047, ¶ 58. A person has actual possession over a firearm when he has " 'present personal

- 7 -

dominion over' " it and " 'exercises immediate and exclusive dominion or control over' " it. *Hilson*, 2023 IL App (5th) 220047, ¶ 58 (quoting *People v. Schmalz*, 194 Ill. 2d 75, 82 (2000)). " 'Actual possession does not require present personal touching of the [firearm] but, rather, present personal dominion over it.' " *Hilson*, 2023 IL App (5th) 220047, ¶ 58 (quoting *Schmalz*, 194 Ill. 2d at 82). By contrast, " '[c]onstructive possession exists where there is no actual, personal, present dominion over [the firearm], but [a person] had knowledge of the presence of the [firearm], and had control over the area where the [firearm] was found.' " *Hilson*, 2023 IL App (5th) 220047, ¶ 58 (quoting *People v. Hunter*, 2013 IL 114100, ¶ 19).

¶ 22        At trial, F.N. testified defendant produced the gun after she and defendant had disrobed. She said he held the gun in his hand, pointing it toward the ground as she attempted to calm him down. Defendant still had the gun in his hand when he grabbed her, and she was able to get him out the door. Police officers testified they found the gun under a door mat outside F.N.'s back door, near where they also found defendant nude. The State, therefore, presented evidence that defendant actually possessed the gun because he had personal, immediate, and exclusive control over it. *Hilson*, 2023 IL App (5th) 220047, ¶ 58. Putting Coe's affidavit alongside this evidence does not place the evidence in a different light, nor does it undermine our confidence in the guilty verdict. *Robinson*, 2020 IL 123849, ¶ 56 ("[T]he conclusive-character element requires only that the petitioner present evidence that places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt."). Coe's affidavit does not eliminate the possibility of defendant possessing the gun on April 8, 2018. In fact, the affidavit makes possession even more possible because Coe stated he did not purchase the gun. In other words, considering Coe's affidavit along with the trial evidence, we cannot say all the evidence "would probably lead to a different result." *Robinson*, 2020 IL 123849, ¶ 47.

¶ 23　　　　Defendant mistakenly argues his convictions turned upon who *owned* the gun. Ownership is not possession. Ownership was not alleged in the indictment, and the State did not have to prove who owned the gun. One can possess a firearm one does not own. Even if ownership were relevant to defendant's convictions, Coe's affidavit would not contradict F.N.'s trial testimony or place it in a different light. F.N. never testified she did not own the gun or that she had never seen the gun before. She testified she did not see the gun in defendant's duffel bag when he first arrived. She then identified the gun she saw defendant holding. Neither the prosecution nor the defense asked F.N. if she had ever seen the gun before, if she ever owned the gun, or if she ever possessed the gun. At best, Coe's affidavit serves to undermine F.N.'s credibility, but that is not the proper purpose for newly discovered evidence. See *People v. Smith*, 177 Ill. 2d 53, 83 (1997). Because the question of ownership played no part in the trial, we cannot find Coe's affidavit has such "conclusive character that it would probably change the result on retrial." *Robinson*, 2020 IL 123849, ¶ 47.

¶ 24　　　　Turning to the DNA evidence, we see it, too, lacks such conclusive character that it would undermine our confidence in the guilty verdict. *Robinson*, 2020 123849, ¶ 56. The trial evidence remains the same—F.N.'s testimony she and defendant engaged in consensual sexual activity and defendant held the gun which led to their struggle in her apartment and police officers' testimony they found the gun near where they encountered defendant outside F.N.'s apartment. This evidence shows defendant possessed the gun, and the DNA evidence does not refute it. The results from testing the DNA swabbed from the gun found outside F.N.'s back door revealed at least two contributors; the majority contributor was a female and the minor contributor a male. The DNA results did not exclude defendant, nor did they positively identify who touched the gun. Setting the DNA evidence alongside the trial evidence does not place the

latter in a different light, nor does it undermine our confidence in the jury's guilty verdict. *Robinson*, 2020 IL 123849, ¶ 56. If defendant had been touching F.N. during sexual activity, he might have transferred her DNA to the gun. His DNA may be on the gun, too. The DNA conclusively shows at least one man's and one woman's DNA on the gun, which is possible, given the trial evidence documenting what occurred between defendant and F.N. on the evening of April 8, 2018. So, in our view, considering the DNA evidence along with the prior trial evidence would not probably lead to a different result. *Robinson*, 2020 IL 123849, ¶ 47.

¶ 25 Ultimately, we hold the newly discovered evidence defendant submits now is not "of such a conclusive character that it would probably change the result on retrial." *Robinson*, 2020 IL 123849, ¶ 47. Defendant's amended postconviction petition, therefore, did not make a substantial showing of actual innocence. The trial court did not err in dismissing it.

¶ 26                                    B. Due Process and the Fourth Amendment

¶ 27 Within the actual innocence claim, and the DNA evidence section specifically, defendant argued his due process and fourth amendment rights were "violated by the Bloomington Police Department's failure to collect a buccal swab after [defendant] was arrested." He cites *Maryland v. King*, 569 U.S. 435 (2013), to support his argument. *King* gives him absolutely no support, however. *King* does not hold that police *must* collect an arrestee's DNA and a failure to do so violates the arrestee's constitutional rights. *King*, instead, held:

> "When officers make an arrest supported by probable cause to hold for a serious offense and they bring the suspect to the station to be detained in custody, taking and analyzing a cheek swab of the arrestee's DNA is, like fingerprinting and photographing, a legitimate police booking procedure that is reasonable under the Fourth Amendment." *King*, 569 U.S. at 465-66.

Because defendant's claim finds no basis in the law, he did not make a substantial showing of a constitutional violation.

¶ 28                              C. The AHC Statute Is Constitutional

¶ 29          Citing the United States Supreme Court's decision in *Bruen*, defendant next argues Illinois's AHC statute violates the second amendment to the United States Constitution (U.S. Const., amend. II) on its face because it "is inconsistent with this nation's historical tradition of firearm regulation." Defendant insists his being an AHC conviction must be vacated if the statute is unconstitutional.

¶ 30          "Constitutional challenges carry the heavy burden of successfully rebutting the strong judicial presumption that statutes are constitutional." *People v. Patterson*, 2014 IL 115102, ¶ 90. "That presumption applies with equal force to legislative enactments that declare and define conduct constituting a crime and determine the penalties imposed for such conduct." *People v. Rizzo*, 2016 IL 118599, ¶ 23. "To overcome this presumption, the party challenging the statute must clearly establish that it violates the constitution." *People v. Sharpe*, 216 Ill. 2d 481, 487 (2005). "A party raising a facial challenge to a statute faces a particularly heavy burden. [Citation.] A statute will be deemed facially unconstitutional only if there is no set of circumstances under which the statute would be valid." *People v. Bochenek*, 2021 IL 125889, ¶ 10.

¶ 31          The second amendment to the United States Constitution declares: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. In *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), the United States Supreme Court held "the Second and Fourteenth Amendments protect the right of an ordinary,

- 11 -

law-abiding citizen to possess a handgun in the home for self-defense." *Bruen*, 597 U.S. at 8-9. The Supreme Court subsequently held the protection of the second and fourteenth amendments (U.S. Const., amends. II, XIV) extends to "an individual's right to carry a handgun for self-defense outside the home." *Bruen*, 597 U.S. at 10. The *Bruen* Court then set forth the analytical framework for evaluating claims under the second amendment, holding a person's conduct is presumptively protected if it is covered by the plain text of the second amendment and the government must justify any regulation of the conduct by showing the regulation is "consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17. An individual's conduct falls outside the second amendment's protection only if the firearm regulation is consistent with this nation's historical tradition. *Bruen*, 597 U.S. at 17.

¶ 32     The regulation at issue here, the AHC statute, provides, in pertinent part, that a "person commits the offense of [being an AHC] if he or she receives, sells, possesses, or transfers any firearm after having been convicted a total of 2 or more times of any combination" of certain enumerated offenses. 720 ILCS 5/24-1.7(a) (West 2018). For purposes of the *Bruen* test, the conduct covered in this regulation is a person possessing a firearm when that person has two prior convictions for qualifying offenses.

¶ 33     Defendant maintains he is included as part of "the people" and enjoys second amendment protection; moreover, he contends his conduct of possessing a firearm is covered by the second amendment's plain text. He finally argues that the AHC statute is inconsistent with our country's historical tradition of firearm regulation. The State, by contrast, contends defendant's "previous felony convictions make him not a law-abiding citizen and, therefore, not protected by the Second Amendment."

¶ 34     We begin by noting that we and our sister districts have already addressed this

precise issue and these very arguments. To be sure, the State relies upon decisions from this court and other districts where we considered constitutional challenges to the AHC statute and found it constitutional. See, *e.g.*, *People v. Leonard*, 2024 IL App (4th) 230413-U, ¶ 15 ("[D]efendant's previous felony convictions make him *not* a law-abiding citizen and, therefore, *not* protected by the second amendment." (Emphases in original.)) (citing *People v. Boyce*, 2023 IL App (4th) 221113-U, ¶ 14; *People v. Langston*, 2023 IL App (4th) 230162-U, ¶ 19); *People v. Brooks*, 2023 IL App (1st) 200435, ¶ 105 (holding the AHC statute is constitutional as applied to the defendant because it is consistent with our history of prohibiting the possession of firearms by felons); *People v. Travis*, 2024 IL App (3d) 230113, ¶ 33 (holding the AHC statute is facially constitutional because "there is a history and tradition dating back to the founding era of identifying dangerous individuals and disarming them"); see also *People v. Gustafson*, 2024 IL App (4th) 231444-U (following Fourth District precedent in finding the AHC statute constitutional because "a *felon's* possession of a firearm is not conduct protected by the second amendment" (emphasis in original)).

¶ 35 While it appears settled amongst our sister districts that the AHC statute is constitutional, either on its face or as applied, the underlying rationale for that conclusion remains unsettled. Some courts, including this one, have held felons are not law-abiding and, therefore, are not entitled to second amendment protections. See *People v. Baker*, 2023 IL App (1st) 220328, ¶¶ 37-39; *Boyce*, 2023 IL App (4th) 221113-U, ¶¶ 14-16 (relying upon *Baker*); *Langston*, 2023 IL App (4th) 230162-U, ¶ 19 (relying upon *Baker* and *Boyce*); *People v. Burns*, 2024 IL App (4th) 230428, ¶¶ 17-21 (considering a different statute but relying upon *Baker* and *Boyce*). It is unclear from these cases whether the court found felons were excepted from "the people" who enjoy second amendment protection or whether the courts found, at *Bruen*'s first

step, that a felon's proposed conduct of possessing a firearm is not covered by the second amendment's plain text and so it is not presumptively protected, although this could be a distinction without a difference. Still, other courts have found a felon's conduct of possessing a firearm is covered by the second amendment's plain text but ultimately held the AHC statute constitutional at *Bruen*'s second step because it is consistent with this nation's history and tradition of disarming felons. *Brooks*, 2023 IL App (1st) 200435, ¶¶ 89, 105 (finding a person's status as a felon is irrelevant at *Bruen*'s first step, but status comes into play in the second step's historical analysis and finding this nation had a tradition of disarming felons); *Travis*, 2024 IL App (4th) 230113, ¶¶ 25-26 (same). What precisely constitutes "law-abiding" or when a person's status as a felon factors into a second amendment analysis are questions that should undoubtedly be addressed by a higher court because they affect who can keep and bear arms—a right the Supreme Court once said presumptively "belong[ed] to all Americans." *Heller*, 554 U.S. at 581. No matter the various rationales and unanswered questions in big-picture-second-amendment jurisprudence, it is enough for our purposes today that Illinois courts have found the AHC statute constitutional under the *Bruen* test. Defendant's arguments that he is part of "the people," his conduct of possessing a firearm was covered by the second amendment's plain text, and our nation does not have a historical tradition of permanently disarming felons have all been considered and rejected in some capacity in other cases. We will not depart from those conclusions. Consequently, defendant has not, and cannot, clearly establish the AHC statute violates the second amendment. *Sharpe*, 216 Ill. 2d at 487.

¶ 36                                    III. CONCLUSION

¶ 37          For the reasons stated, we affirm the trial court's judgment.

¶ 38          Affirmed.